IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FRANCIS MARION WOZNIAK, )
)
      Plaintiff, )
)
 -vs- ) Civil Action No. 16-139
)
NANCY A. BERRYHILL,[1] )
COMMISSIONER OF SOCIAL SECURITY, )
)
      Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Francis Marion Wozniak ("Wozniak") brings this action pursuant to 42 U.S.C. §1383 for review of the ALJ's decision denying a claim for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§1381-1383f. Wozniak alleges a disability beginning on November 6, 2003. (R. 190-96) He contends that he is disabled due to a number of mental and physical impairments. Following a hearing which included a consultation with a vocational expert, the ALJ denied his claim, concluding that Wozniak had the residual functional capacity ("RFC") to perform light work, with certain restrictions. (R. 332-33) Wozniak appealed. Pending are Cross Motions for Summary Judgment. See ECF Docket nos. 9 and 13. After careful consideration, the case is remanded for further consideration.

### Legal Analysis

1. <u>Standard of Review</u>

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

1

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

    2. <u>Whether Substantial Evidence Supports the ALJ's RFC Assessment</u>

Wozniak takes issue with the ALJ's treatment of medical reports submitted by DeanAnn Farris, DO and Debra Bjork, DO. Wozniak had treated with both Farris and

2

Bjork at Stairways Behavioral Health for mental impairment issues. On December 6, 2013, Dr. Farris submitted a medical report opining that, based upon her observations, clinical history, review of the treatment records and signs / symptoms, Wozniak would not be able to maintain regular attendance on a sustained basis; would not be able to interact appropriately with fellow workers on a sustained basis; and would not be able to interact appropriately with supervisors on a sustained basis and respond appropriately to supervisory criticism. (R. 392-93) In a report dated October 6, 2014, Dr. Bjork echoed the same findings. (R. 569)

> The ALJ explained that:
>
> [t]hese forms are given some limited weight as treating source opinion statements, although more than moderate symptoms were typically not reflected in the claimant's treatment notes and GAF scores through Stairways, with limited increases in symptoms associated with specific circumstantial stress factors. Furthermore, more than moderate restrictions in social functionings are not documented, with the claimant confirming that he goes to church and AA meetings regularly, and stays in touch with his good friends and some of his relatives (Exhibit B3E/5, 11; testimony). The claimant's treatment notes do not indicate any substantial deficits in his ability to interact appropriately with others, and although he reported some problems in this area at the hearing, in a functional self-assessment he denied problems getting along with family, friends, and neighbors, and he stated that he gets along 'well' with authority figures (Exhibit B3E/6-7, testimony). <u>Greater weight is given to the GAF scores and longitudinal treatment notes through Stairways, with moderate limitations in social functioning reflected in the residual functional capacity assessment of this decision.</u>

(R. 31) (emphasis added).

After careful review of the record, applicable regulations and relevant case law, I agree with Wozniak that the ALJ's finding in this regard is problematic. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to that of a non-examining source. 20 C.F.R. § 416.927(c)(1). Additionally, the ALJ

typically will give more weight to opinions from treating physicians "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from the reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* If a treating physician's opinion is not given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient / physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. 20 C.F.R. § 416.927(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." 20 C.F.R. § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(c)(2), the opinion of a

> treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Social Security*, 403 Fed. Appx. 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." *Dixon v. Comm'r. of Soc. Sec.*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) (stating that "opinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reasons." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation for his / her final determination so that a reviewing court has the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 745 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

Here, the ALJ did not reject Dr. Farris' and Dr. Bjork's opinions outright, rather he discounted the findings as not consistent with the treatment notes or GAF scores, or with Wozniak's activities of daily living. (R. 30-31). Although these are appropriate reasons for declining to give a treating physician's opinion controlling weight, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999), the ALJ's findings in this regard are not supported by substantial evidence.

The ALJ found the treating physicians' reports to be at odds with the treatment notes and longitudinal record. Certainly the treatment notes indicate occasions on which Wozniak reported that he was "doing well," (R. 29) yet there were many occasions, as the ALJ acknowledged, that Wozniak reported increased anxiety, depression, mood swings and irritability. (R. 29) The treatment notes do not suggest a steady improvement but a vacillation between these states. This would not seem to be atypical of a person who suffers from bipolar disorder. Additionally, the fact that Wozniak may have been presenting with intact thought processes at exams does not necessarily equate with an ability to engage in substantial gainful employment.

The ALJ also relied upon Wozniak's GAF scores. Specifically, the record indicates that on 4 occasions Wozniak was assessed with a GAF of 55 or above – indicating moderate symptoms. The ALJ found these scores to be persuasive. Yet on 3 occasions interspersed during that same time frame, Wozniak was assessed with GAF scores between 45-50. (R. 319, 321, 515, 520, 533, 573). These scores indicate "serious symptoms or serious impairment in social or occupational functioning." This nearly even split does not amount to substantial evidence supporting the ALJ's position.

Nor do I find Wozniak's activities of daily living to constitute substantial evidence. The ALJ stated that "more than moderate restrictions in social functioning are not documented, with the claimant confirming that he goes to church and AA meetings regularly, and stays in touch with his good friends and some of his relatives." (R. 30-31) The records indicate that Wozniak, in fact, has no contact with his son and he reports difficulty socializing, particularly with his mother. He explains that he "snaps" at her for no reason. (R. 64) Wozniak did acknowledge keeping in touch with some friends "over

6

the phone" and said that he has "a couple good friends that I keep in touch with and that I see regularly." (R. 70) Yet it is difficult to extrapolate from seeing good friends or attending church or AA meetings to being able to interact with co-workers and supervisors appropriately on a daily basis. Indeed, as stated above, both of his treating physicians opined that he would be unable to. Wozniak's own testimony was consistent in this respect. He testified that his attendance would be "hit and miss" and that he would definitely miss a few days a month when he does not want to be around anyone. (R. 83) He also said it would be hard to be in front of a boss who criticized him. (R. 83) Again, in light of this testimony, I cannot find the ALJ's selective citations to constitute "substantial evidence."

Most troubling, however, is that the ALJ rejected Dr. Farris' and Dr. Bjork's opinions regarding Wozniak's functional limitations when there was no competing or contradictory medical opinions of record. Without any medical opinion upon which to base the restrictions related to Wozniak's mental impairments, here the ALJ's RFC analysis is based upon mere speculation and thus lacks substantial evidentiary support.

Certainly an ALJ is charged with formulating the RFC based on all of the relevant evidence including all medical evidence or otherwise. Titterington v. Barnhart, 174 Fed. Appx. 6, 11 (3d Cir. 2006) (stating that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties.") But, as I stated in *Terner v. Colvin*, Civ. No. 14-1603, * 2 (W.D. Pa. Aug. 13, 2015):

> [t]he ALJ, of course, must make the ultimate disability and RFC determinations. *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). "The [RFC] assessment is a

7

medical one and must be determined on the basis of medical evidence." *Warfle v. Astrue*, 2011 U.S. Dist. LEXIS 150692 (M.D. Pa. May 5, 2011) "Rarely can a decision be made regarding a claimant's [RFC] without an assessment from a physician regarding the functional abilities of the claimant." *Gormont v. Astrue*, 2013 U.S. Dist. LEXIS 31765, at * 27 (M.D. Pa. 2013); *Goodson v. Colvin*, 2015 U.S. Distr. LEXIS 58100, 2015 WL 2065328 (W.D. Pa. May 4, 2015). As stated with respect to physical limitations, for example, "[o]nce the doctor has determined how long the claimant can sit, stand or walk … then the ALJ, with the aid of a vocational expert if necessary, can translate that medical determination into a residual functional capacity determination." *Gormont*, 2013 U.S. Dist. LEXIS 31765, at * 27 (quoting Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, 287-88 (2011)). Thus:
> If an administrative law judge makes a residual functional capacity assessment on the basis of his or her review of the evidence, including the medical records, without the benefit of an expert opinion from a physician or other qualified medical professional regarding the exertional abilities of a claimant, the administrative law judge has improperly substituted his or her own lay medical opinion for that of a physician or other qualified medical professional.

*Warfle*, 2011 U.S. Dist. LEXIS 150692 at * 16.

*Terner v. Colvin*, Civ. No. 14-1603, 2015 WL 4873929 at * 2 (W.D. Pa. Aug. 13, 2015). Here, the ALJ determined that Wozniak had the residual functional capacity to perform "less than a full range of light work" limited, in part, "to simple, routine, repetitive tasks involving only simple work-related decisions with few, if any, workplace changes; limited to only occasional interaction with supervisors, co-workers, or the public; and no tandem tasks." (R. 24) Yet there is no medical opinion of record supporting Wozniak's functional ability to perform these work-related activities. Indeed, "[b]ecause no physician opined as to such limitations, it is unclear how the ALJ reached the conclusion, that [Wozniak] should be limited to a low-stress, stable environment, only simple work-related decisions, and only occasional interaction with the public." *Terner*, 2015 WL 4873929 at * 2. I am unable to discern how the ALJ arrived at the limitations in the RFC, particularly in light of the fact that in formulating the RFC he relies upon he fails to reference any

medical opinions which contradict those offered by Wozniak's treating physicians. "As suggested by case law, there may be cases in which the ALJ may make an RFC assessment without any medical opinion regarding a Plaintiff's functional capacity." *Id.* This case, which involves a claimant with a long history of mental issues, does not present one of those rare instances.[2]

Consequently, this case must be remanded for further consideration. Upon remand, the ALJ should reexamine the issue of the treatment notes and Wozniak's activities of daily living, taking care to explain how notations that "doing well" or attending AA meetings or church functions translate to an ability to engage in substantial gainful employment. Additionally, upon remand, the ALJ may wish to consider securing an opinion from a consultative examiner.

---

[2] Because I find that the ALJ's assessment of the weight accorded to the treating physician's opinions requires a remand, as does, by necessity, the formulation of the RFC, I need not address Wozniak's other arguments. I do note, however, that "[t]he regulations only require that a consultative examination be performed by a 'qualified medical source' meaning that a medical source must be currently licensed and have training and experience to perform the type of exam or test requested. 20 C.F.R. 404.1519g. There is no requirement that the medical source be qualified in a specific medical specialty …." *Eaton v. Astrue*, Civ, No. 11-2497, 2012 WL 3241042 at * 5 (D. Md. Aug. 6, 2012) (rejecting the claimant's contention that a consultative examiner's opinion must be discounted because he specialized in physical medicine and rehabilitation instead of cardiology where the claimant alleged cardiac imparments). Nevertheless, I do find it curious that a consultative examiner whose specialty is in obstetrics / gynecology, was used to assess Wozniak's physical impairments when those impairments were orthopedic in nature.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FRANCIS MARION WOZNIAK,)
)
    Plaintiff,)
)
 -vs-)    Civil Action No. 16-139
)
NANCY A. BERRYHILL,)
COMMISSIONER OF SOCIAL SECURITY,[3])
)
    Defendant.)

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 9th day of March, 2017, it is hereby ORDERED that the decision of the ALJ is reversed. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 9) is granted and Defendant's Motion for Summary Judgment (Docket No. 13) is denied. This case is remanded for further proceedings consistent with the Opinion issued in conjunction with this Order.

                BY THE COURT:

                /s/ Donetta W. Ambrose
                Donetta W. Ambrose
                United States Senior District Judge

---

[3] Nancy A. Berryhill became the acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.